UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MOLLY MUNN,

                                   Plaintiff,

        - against -                                          **OPINION & ORDER**

APF MANAGEMENT COMPANY, LLC,                                 No. 19-CV-10791 (CS)
CARL E. PETRILLO, GREGORY J. PETRILLO,
MATTHEW J. PETRILLO, SELZNICK &
CO. LLP, JOSEPH KLAUSNER, AND JOHN
DOES 1-10,

                                   Defendants.
----------------------------------------------------------x

Appearances:

Matthew T. Eyet
Eyet Law LLC
New Brunswick, New Jersey
*Counsel for Plaintiff*

Robert A. Spolzino
Edward A. Smith
Abrams, Fensterman, Fensterman, Eisman,
Formato, Ferrara, Wolf & Carone, LLP
White Plains, New York
*Counsel for Defendants APF Management Company, LLC,*
*Carl E. Petrillo, Gregory J. Petrillo, and Matthew J. Petrillo*

Robert J. Bergson
Alexander Rabinowitz
Abrams Garfinkel Margolis Bergson, LLP
New York, New York
*Counsel for Defendants Selznick & Co. LLP*
*and Joseph Klausner*

Seibel, J.

        Before the Court are the motions to dismiss of Defendants Selznick & Co. LLP and

Joseph Klausner (together, the "Selznick Defendants"), (Doc. 37), and Defendants Carl E.

Petrillo, Gregory J. Petrillo, Matthew J. Petrillo (together, the "Petrillo Defendants"), and APF

Management Company, LLC ("APF" and, together with the Petrillo Defendants, the "APF

Defendants"), (Doc. 42).  For the following reasons, the motions are GRANTED.

## I.     <u>BACKGROUND</u>

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Second Amended

Complaint, (Doc. 36 ("SAC")), as supplemented by documents incorporated therein.

Plaintiff Molly Munn contributed $400,000 to become a member and 50% owner of APF

when the company was formed in 2011.  (*Id.* ¶¶ 11-13; *id.* Ex. A at 1.)  The other half of APF is

owned by the Petrillo Defendants, who collectively contributed the same amount in exchange for

their membership and ownership interests.  (*Id.* ¶¶ 11-12, 14; *id.* Ex. A at 1.)

In 2013, APF filed suit in state court against Plaintiff, her father, her family business, and

a former APF employee for breach of fiduciary duty, breach of contract, tortious interference

with business relations, diversion of corporate opportunities, and unfair competition.  (*Id.* ¶ 16;

Doc. 43 ("Smith Decl.") Ex. A ¶ 1.)  After a jury trial in 2017, APF obtained a multimillion-

dollar judgment against those defendants, which precipitated the family business's filing for

Chapter 11 bankruptcy less than a year later in 2018.  (SAC ¶¶ 17-18; Smith Decl. Ex. E ¶¶ 14,

17; *see id.* Exs. B, D.)

During the bankruptcy proceedings, Plaintiff, her father, and her family business entered

into a settlement agreement with APF to satisfy the state court judgment.  (SAC ¶ 19; *id.* Ex. B

¶¶ 3, 5.)  As part of the settlement agreement, the "Judgment Debtors," which included Plaintiff,

agreed to release all claims against APF and its professionals, "whether known or

unknown, . . . and whether anticipated or unanticipated," that they "had, have, may ever have, or

may ever claim to have, against APF, that arose prior to the Effective Date," which the parties do

not dispute is June 14, 2019.  (*Id.* Ex. B ¶ 8; *see* Doc. 39 ("Selznick Ds' Mem.") at 9; Doc. 44

("APF Ds' Mem.") at 7.)

    At trial, one of the Petrillo Defendants had testified that APF reported losses of

approximately $3,000,000 on its Form 1065 partnership tax returns over the years 2013-2018.

(SAC ¶¶ 22-23.)  In August or September of 2019, Plaintiff reviewed her Schedule K-1 tax

forms for the years 2011-2018, which she alleges that she had never received before then, and

"became aware for the first time that she had been allocated a combined loss of $400,000 in 2011

and 2012" but had not been allocated any losses in 2013-2018.  (*Id.* ¶¶ 21, 22.)  Plaintiff posits

that under APF's operating agreement, she "should be entitled to allocations equal to the

collective total allocated to the Petrillos" if the testimony at trial was accurate, and she alleges

that "Defendants' failure to timely furnish Plaintiff with an annual Form K-1 may have deprived

[her] of the ability to file an accurate personal income tax return for one or more tax years,

and/or take advantage of potential tax savings."  (*Id.* ¶¶ 25, 34.)

    In pursuit of this theory, Plaintiff requested copies of APF's Form 1065 partnership

returns for 2011-2018 from the Petrillo Defendants, but they failed to provide them.  (*Id.* ¶¶ 26-

27.)  The Selznick Defendants, who are the APF Defendants' accountants, failed to provide

copies of the forms as well, although Plaintiff does not allege that she requested these documents

from them, but rather that they were merely "made directly aware" of Plaintiff's requests and the

APF Defendants' "refusal to provide such information."  (*Id.* ¶¶ 28, 35-36.)

    In November 2019, Plaintiff brought this action against the Selznick and APF

Defendants, as well as "John Does 1-10,"[1] seeking declaratory relief allowing her access to

---

    [1] Plaintiff's Complaint, Amended Complaint, and Second Amended Complaint are
devoid of allegations regarding the John Does named in the caption.

APF's tax documents, and damages under 26 U.S.C. § 7434.  (Doc. 4.)  Before Defendants

answered, Plaintiff filed an Amended Complaint in December containing minor changes and

attaching APF's operating agreement and the bankruptcy settlement agreement as exhibits.  (*See*

Docs. 13 to 13-2.)  In February 2020, Defendants filed letters in contemplation of motions to

dismiss.  (Docs. 20, 24.)  Plaintiff responded, (Doc. 28), and the Court held a pre-motion

conference on March 24, at which Plaintiff was granted further leave to amend, (Minute Entry

dated Mar. 24, 2020).  In April, Plaintiff filed her Second Amended Complaint, adding factual

allegations and a "Tortious Interference and Conspiracy to Commit Tortious Interference with a

Potential Business Benefit" claim against the Petrillo and Selznick Defendants.  (SAC ¶¶ 50-57.)

The instant motions followed.

## II.  <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks

omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure

from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

On a motion to dismiss, a court is generally confined to the four corners of the complaint, the documents incorporated in or attached thereto, documents on which the plaintiff relied in bringing the case, and matters of which it is entitled to take judicial notice. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013). Here, in addition to the Second Amended Complaint, the Court also considers the operating and settlement agreements attached thereto, (SAC Exs. A-B), as well as the complaint and judgment from the state court litigation initiated by APF, (Smith Decl. Exs. A-B), and the petition and declaration filed in the bankruptcy proceedings for Plaintiff's family business, (*id.* Exs. D-E). *See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (courts may "look to public records, including complaints filed in state court, in deciding a motion to dismiss"); *Rosen v. Fink*, No. 99-7354, 1999 WL 1212564, at *1 (2d Cir. Dec. 13, 1999) (summary order) (unpublished table decision) (court documents are matters of public record that district courts may consider on a motion to dismiss); *Lynn v. McCormick*, No. 17-CV-1183, 2017 WL 6507112, at *3 (S.D.N.Y. Dec. 18, 2017) ("A court may take judicial notice of public records

such as pleadings, orders, judgments, and other documents from prior litigation, including state court cases, but it does so not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (citations and internal quotation marks omitted), *aff'd*, 760 F. App'x 51 (2d Cir. 2019) (summary order).

III.   **DISCUSSION**

      Plaintiff's Second Amended Complaint contains three counts:  Count I alleges that all "Defendants have breached state common law, fiduciary law and/or contract law," *i.e.*, APF's operating agreement, "by failing to allow Plaintiff access to, or provide copies of, [APF's] Forms 1065 and Forms K-1 . . . for [APF's] co-owners, the Petrillos, for tax years 2011-2018" and seeks declaratory relief allowing her to access and copy those forms.  (SAC ¶¶ 38, 43-44.) Count II seeks damages under 26 U.S.C. § 7434 against the Petrillo and Selznick Defendants, who allegedly caused APF "to file numerous fraudulent information returns related to tax years 2011-2018" and defrauded Plaintiff through "a fraudulent scheme which classified certain personal and business expenses as capital contributions to ensure the Petrillos would receive enormous loss allocations per the terms of [APF's operating agreement]."  (*Id.* ¶¶ 46-48.)  And Count III, brought against the Petrillo and Selznick Defendants and titled, "Tortious Interference and Conspiracy to Commit Tortious Interference with a Potential Business Benefit," alleges that "Defendants have conspired to tortuously [*sic*] interfere with a potential benefit of Plaintiff by intentionally filing fraudulent tax returns" and "in doing so deprived Plaintiff of a potential benefit under federal tax laws."  (*Id.* ¶¶ 55-56.)

      Defendants seek dismissal on several grounds:  (1) all claims against the Selznick Defendants and APF are barred by the bankruptcy settlement agreement, (Selznick Ds' Mem. at 2, 8-12; APF Ds' Mem. at 3, 22-25); (2) Count I fails to state a claim against the Selznick

Defendants because they do not owe a fiduciary duty to Plaintiff, (Selznick Ds' Mem. at 2-3); (3) Count I must be dismissed as to APF for lack of subject matter jurisdiction or for failure to state a claim because the forum selection clause in APF's operating agreement requires such claims to be brought in state court, (APF Ds' Mem. at 2, 13-19); (4) Count I fails to state a claim against the Petrillo Defendants because they cannot be held personally liable for APF's obligations, (*id.* at 2, 19-20); (5) Count II fails to state a claim against any Defendant because the Form 1065 partnership returns did not report payments made to Plaintiff or, alternatively, are not "information returns" for the purposes of § 7434, (Selznick Ds' Mem. at 3, 17; APF Ds' Mem. at 1-2, 9-11); (6) Count II fails to state a claim against any Defendant because Plaintiff does not allege how she has been damaged by the allegedly fraudulent information returns, (Selznick Ds' Mem. at 4, 18-19); and (7) Count III fails to state a claim against any Defendant because New York does not recognize a cause of action for tortious interference with a potential business benefit and Plaintiff has failed to plead facts that would support a tortious interference with contract or prospective business relations claim, (*id.* at 4, 20-23; APF Ds' Mem. at 3, 20-22).

In opposition, Plaintiff spends the bulk of her memorandum arguing that the Court has federal question jurisdiction over her claims, but she fails to respond to most of Defendants' substantive arguments for dismissal, addressing only Defendants' arguments that Count II fails to state a claim, as well as the APF Defendants' argument that Count I must be dismissed because of the forum selection clause in APF's operating agreement. (*See* Doc. 40 ("P's Opp.").) The Court therefore begins its analysis with Count II, Plaintiff's § 7434 claim.

A.    <u>Section 7434</u>

"Section 7434 affords a damages remedy for victims of the malicious reporting of false payments." *Pacheco v. Chickpea at 14th St. Inc.*, No. 18-CV-6907, 2019 WL 3749318, at *2

(S.D.N.Y. Aug. 8, 2019) (internal quotation marks and alteration omitted).  "Congress's goal in enacting § 7434 was to give redress to taxpayers aggrieved by the filing of information returns that fraudulently misrepresent the amount paid to the taxpayer."  *Liverett v. Torres Advanced Enter. Sols. LLC*, 192 F. Supp. 3d 648, 655 (E.D. Va. 2016).[2]  It provides:  "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."  26 U.S.C. § 7434(a).  A plaintiff who establishes a defendant's liability under § 7434(a) is entitled to the greater of $5,000 or the sum of the plaintiff's actual damages, costs, and (at the court's discretion) attorneys' fees.  *Id.* § 7434(b).

To state a claim under § 7434, "a plaintiff must allege facts to support that:  (1) the defendant issued an information return; (2) the information return was fraudulent; and (3) the defendant willfully issued the fraudulent information return."  *Yunjian Lin v. Grand Sichuan 74 St. Inc.*, No. 15-CV-2950, 2019 WL 3409892, at *4 (S.D.N.Y. July 29, 2019) (internal quotation marks omitted).  There is, however, one further caveat:  "By its terms, . . . [§ 7434] provides a cause of action only to a person *to whom payments were purportedly made* according to the fraudulent information return."  *Pacheco*, 2019 WL 3749318, at *1 (emphasis in original)

---

[2] "Congress's rationale for enacting § 7434 was that 'some taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers.'"  *Liverett*, 192 F. Supp. 3d at 653-54 (quoting H.R. Rep. No. 104-506, at 35 (1996), *reprinted in* 1996 U.S.C.C.A.N. 1143, 1158).  "Indeed, prominent tax law commentators have traced § 7434's origin to a specific policy problem: 'malcontents who "sometimes file fraudulent information returns reporting large amount[s] of income for judges, law enforcement officials, and others who have incurred their wrath."'"  *Id.* at 654 (quoting Jacob L. Todres, *Torts, Tax Reporting, and Preemption:  Is There Tort Liability for Incorrect Information Reports?*, 28 J. Corp. L. 259, 281 (2003)).  "In other words, Congress was aware of a problem – the malicious reporting of false payments – and designed § 7434 to afford a damages remedy for victims of that problem."  *Id.*

(internal quotation marks omitted).  Consequently, a claim under § 7434 can be brought only "where there is a falsehood made to the IRS with respect to payments made to the plaintiff bringing the action."  *Pacheco v. Chickpea at 14th St. Inc.*, No. 18-CV-6907, 2019 WL 2292641, at *4 (S.D.N.Y. May 30, 2019), *report and recommendation adopted*, 2019 WL 3749318.

As Defendants note, Plaintiff's § 7434 claim is based on information returns that are allegedly fraudulent because of Defendants' classification of "certain personal and business expenses as capital contributions to ensure the Petrillos would receive enormous loss allocations."  (SAC ¶¶ 46-47.)  Plaintiff does not allege that the information returns were fraudulent with respect to payments purported to be made to *her*.  Indeed, Plaintiff does not allege that Defendants reported *any* payments that were purportedly made to her.  Plaintiff has therefore failed to state a claim for relief under § 7434.  *See Pacheco*, 2019 WL 3749318, at *1 (plaintiff had no cause of action under § 7434 where allegedly fraudulent information return did not report payments made to plaintiff); *Nguyen v. Luong*, No. 18-CV-7302, 2019 WL 2191341, at *1, *3-4 (N.D. Cal. May 20, 2019) (dismissing § 7434 claim as a matter of law because tax credits from business losses, the benefit of which plaintiff alleged he had been wrongfully deprived, did not constitute payments purported to be made to plaintiff).

Other than listing the elements of a § 7434 cause of action, Plaintiff offers nothing in opposition to Defendants' argument that she cannot bring suit under § 7434 because she is not the "other person" to who payments were purportedly made.  (*See* P's Opp. at 9 (citing *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014)).)  But this recitation of elements is from a case that did not address the issue here – whether a person indirectly affected by an allegedly fraudulent information return may bring a § 7434 claim.  *See Liverett*, 192 F. Supp. 3d at 651 ("This formulation of the elements, however, does not address the effect of the

phrase 'with respect to' and . . . fail[s] to give this language its proper effect," which "undermines Congress's intent in enacting § 7434; the 'with respect to' language serves an important purpose in limiting the scope of actionable frauds.") (alterations omitted). "In essence, [Plaintiff] suggests the statute authorizes a suit by anyone adversely affected (whether directly or indirectly) by a fraudulent information return. While Congress could have written such a broad statute, it did not do so in § 7434." *Baker v. Batmasian*, 730 F. App'x 776, 780 (11th Cir. 2018) (*per curiam*). Merely alleging that Defendants willfully issued a fraudulent information return is insufficient to survive a motion to dismiss; Plaintiff must allege that Defendants willfully issued an information return that was fraudulent with respect to payments purported to be made to her. *See Pacheco*, 2019 WL 3749318, at *1.[3]

Because she has not done so, Plaintiff has failed to state a claim under § 7434 and Count II is dismissed.

### B.    Jurisdiction over Remaining Claims

Defendants argue that neither Count I nor Count III provides an independent basis for subject matter jurisdiction and that, upon dismissal of Plaintiff's only federal claim (Count II), the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. (*See* Selznick Ds' Mem. at 4, 19-20; APF Ds' Mem. at 2, 12-13.)[4] In response,

---

[3] Because Plaintiff's § 7434 claim fails on these grounds, the Court need not address Defendants' alternative arguments that Form 1065 partnership returns are not "information returns" for the purposes of § 7434 or that Plaintiff has failed to allege how she has been damaged by the allegedly fraudulent information returns.

[4] The Court lacks diversity jurisdiction because Plaintiff and APF are both citizens of the same state. *See Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 119 (S.D.N.Y. 2015) ("For jurisdictional purposes, [an LLC] is a citizen of every state of which any of its members is a citizen. Thus, in general, a plaintiff who is a member of an LLC cannot bring a diversity action against the LLC.") (internal quotation marks, alteration, and citation omitted); *see also Carter v.*

Plaintiff contends that even though Counts I and III are state law claims, both arise under federal law and thus provide an independent basis for subject matter jurisdiction.  (*See* P's Opp. at 2-7.)

District courts have federal question jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "A case can arise under federal law in two ways.  First, a federal law can create the cause of action asserted.  Second, state-law claims can necessarily depend on resolution of a substantial question of federal law." *Tantaros v. Fox News Channel, LLC*, 427 F. Supp. 3d 488, 492 (S.D.N.Y. 2019) (citations, internal quotation marks, and alteration omitted), *appeal filed*, No. 20-3413 (2d Cir. Oct. 6, 2020).  "Finding federal question jurisdiction in this latter category is rare, and is confined to a special and small category of cases."  *Id.* at 493 (internal quotation marks and citations omitted).

"It is well established that 'the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'"  *Sung ex rel. Lazard Ltd. v. Wasserstein*, 415 F. Supp. 2d 393, 398 (S.D.N.Y. 2006) (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)).  Instead, "federal jurisdiction over a state law claim will lie if a federal issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  Regarding the first element, "a federal issue is necessarily raised when the very success of the state claim depends on giving effect to a federal requirement, and the federal issue is an essential element of the state law claim." *Tantaros*, 427 F. Supp. 3d at 494 (internal quotation marks, alterations, and citations omitted). "In contrast, this first element is not present where all of the plaintiff's claims seek relief under

---

*HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016) ("In general, the citizenship of a limited liability company is determined by the citizenship of each of its members.").

state law and none necessarily raises a federal issue." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315-16 (2d Cir. 2016) (internal quotation marks and alterations omitted).  Regarding the third element, "[t]he mere inclusion of a federal issue in a state cause of action does not guarantee the presence of federal question jurisdiction; the federal question must also be substantial as opposed to a minor, technical addition to a state claim." *Tasini v. N.Y. Times Co.*, 184 F. Supp. 2d 350, 358 (S.D.N.Y. 2002).  "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit . . . .  The substantiality inquiry . . . looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260.  Accordingly, "if the federal issue presented is not 'a nearly pure issue of law,' but rather 'is fact-bound and situation-specific,' federal jurisdiction may not be appropriate." *In re Gen. Motors LLC Ignition Switch Litig.*, 69 F. Supp. 3d 404, 414 (S.D.N.Y. 2014) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006)).

    With these principles in mind, the Court addresses Plaintiff's remaining claims in turn.

### 1.    Declaratory Judgment for State Law Violations

    In Count I, Plaintiff requests relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, for Defendants' violations of "state common law, fiduciary law and/or contract law."  (SAC ¶¶ 38, 44.)  "It is well established that the Declaratory Judgment Act does not extend the jurisdiction of the federal courts." *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018) (summary order) (internal quotation marks omitted).  "Therefore 'if, but for the availability of the declaratory judgment procedure,' there would be no jurisdiction over the issues involved in the suit, then 'jurisdiction is lacking.'" *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 181-82 (2d Cir. 2018) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 2 (1983)); *accord Architectural Body Rsch.*

*Found. v. Reversible Destiny Found.*, 335 F. Supp. 3d 621, 634-35 (S.D.N.Y. 2018) ("The

Declaratory Judgment Act does not independently create federal jurisdiction and thus is

insufficient to confer federal jurisdiction in the absence of a controversy involving a federal

question.") (internal quotation marks, citation, and alteration omitted).

       Plaintiff argues that even though her declaratory judgment claim is grounded in state law,

"the *reason* for its assertion is because Defendants violated federal tax laws" and therefore

federal law is "critically important to the outcome of the [claim]."  (P's Opp. at 6 (emphasis in

original).)  That is not the standard for whether a claim arises under federal law.  The relevant

question is whether Plaintiff's claim for declaratory relief necessarily raises a substantial federal

issue, *see Gunn*, 568 U.S. at 258, not whether the series of events that allegedly gave rise to

Plaintiff's state law claims were brought about by an action regulated by federal law, *see*

*Anderson v. Sea/Sue Inc.*, No. 13-CV-4228, 2013 WL 12139143, at *1 (C.D. Cal. July 23, 2013)

("[Plaintiffs'] right to receive a distribution of corporate profits is a matter of state law . . . .  The

tax consequences of the dispute, which may have motivated the dispute and are of serious

concern to [Plaintiffs], are nevertheless immaterial to the question of their right to receive

distributions of their share of corporate profits."); *see also Belmont v. JetBlue Airways Corp.*,

401 F. Supp. 3d 348, 360 (E.D.N.Y. 2019) (mere fact that a defendant's conduct "might be

regulated by federal law does not in and of itself create federal jurisdiction").

       Plaintiff's claim for declaratory relief is based on Defendants' alleged failure "to allow

Plaintiff access to, or provide copies of, [APF's] Forms 1065 and Forms K-1 . . . for [APF's] co-

owners, the Petrillos, for tax years 2011-2018."  (SAC ¶ 38.)  If Plaintiff is correct that

Defendants were obligated to provide access to these documents, they would be obligated to do

so regardless of whether those forms complied with federal tax laws.  As a result, this claim does

not raise a federal issue at all, let alone necessarily raise a substantial one, and therefore fails to provide an independent basis for subject matter jurisdiction. *See Norton v. Town of Islip*, 97 F. Supp. 3d 241, 267-68 (E.D.N.Y. 2015) (dismissing declaratory judgment claims that lacked an independent basis for subject matter jurisdiction and declining to exercise supplemental jurisdiction over state law claims), *aff'd*, 678 F. App'x 17 (2d Cir. 2017) (summary order); *Goldberg v. Cablevision Sys. Corp.*, 281 F. Supp. 2d 595, 604-05 (E.D.N.Y. 2003) (same).

### 2.      Tortious Interference

In Count III, Plaintiff brings a claim for "Tortious Interference and Conspiracy to Commit Tortious Interference with a Potential Business Benefit" under the theory that Defendants "deprived Plaintiff of a potential benefit under federal tax laws" by "intentionally filing fraudulent tax returns." (SAC ¶¶ 55-56.) Plaintiff argues that her tortious interference claim arises under federal law because it "would require a finding that Defendants violated one or more [Internal Revenue Code] provisions." (P's Opp. at 6.) I disagree.

As Defendants note – and Plaintiff does not dispute – New York does not recognize a cause of action for tortious interference with a potential business benefit. (*See* Selznick Ds' Mem. at 4, 20.) New York courts have recognized causes of action for tortious interference with contract (for "inducing breach of a binding agreement") and tortious interference with business relations (for "interfering with a nonbinding 'economic relation'"), but "the elements of the two torts are not the same." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189 (2004). Under New York law, a claim for tortious interference with contract requires showing "(1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of a third-party's breach of contract without justification, and (4) damages." *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 160 (2d Cir. 2019)

(internal quotation marks omitted).  A tortious interference with business relations claim, which

is "also known as tortious interference with prospective economic advantage," requires showing

that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with

those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair,

or improper means; and (4) the defendant's acts injured the relationship."  *16 Casa Duse, LLC v.*

*Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (citation and internal quotation marks omitted).

Among their substantive arguments for dismissal, Defendants contend that Plaintiff's claim does

not fit into either of these causes of action, because Plaintiff complains of conduct directed at

herself rather than at a party with which she has or seeks to have a relationship.  (Selznick Ds'

Mem. at 21; APF Ds' Mem. at 3, 21); *see Travelex Currency Servs., Inc. v. Puente Enters., Inc.*,

449 F. Supp. 3d 385, 401 (S.D.N.Y. 2020); *Carvel Corp.*, 3 N.Y.3d at 192.  Regardless of

whether this is so, and assuming (without deciding) that Plaintiff's claim would require

determining whether Defendants violated federal tax laws, Plaintiff's claim does not arise under

federal law, because the federal issue would not be substantial.

The gravamen of Plaintiff's tortious interference claim is not that Defendants violated

federal tax laws *per se*, but that Plaintiff "should be entitled to allocations equal to the collective

total allocated to the Petrillos in accordance with the [APF operating agreement]" and that

"Defendants' failure to timely furnish Plaintiff with an annual Form K-1 may have deprived

[her] of the ability to file an accurate personal income tax return for one or more tax years,

and/or take advantage of potential tax savings."  (SAC ¶¶ 25, 34.)  But success on this claim does

not turn on a finding that the Petrillo Defendants violated federal tax law.  After all, if – as

Plaintiff alleges – the Petrillo Defendants misclassified their personal expenses to receive

fraudulent loss allocations, they may have defrauded the U.S. government, but they could not

have deprived Plaintiff of a potential benefit under the federal tax laws, because Plaintiff would not be entitled to take a cut of those fraudulent loss allocations.  Plaintiff's theory of harm makes sense only if the Petrillo Defendants classified their expenses properly but failed to allocate to Plaintiff her fair share of losses in accordance with APF's operating agreement, which, if anything, would constitute a breach of contract – not a violation of federal tax laws.  In other words, either Defendants committed tax fraud, in which event Plaintiff would not be entitled to do the same, or they did not, in which event Plaintiff's claim solely presents issues of state law.

Here, "the tax rules are merely part of the landscape of the litigation" but "are not in dispute"; instead, it is Plaintiff's right to loss allocations that is in dispute, which is "solely a concern among the litigants at hand." *Anderson*, 2013 WL 12139143, at *4-5 (finding no federal question jurisdiction).  While it might require the application of federal (and, for that matter, state) tax law to determine whether Defendants committed fraud, it would not require *interpretation* of federal tax laws or otherwise present a "'a nearly pure issue of law . . . that could be settled once and for all and thereafter would govern numerous federal cases.'" *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 58 (S.D.N.Y. 2011) (alteration omitted) (quoting *Empire Healthchoice Assur., Inc.*, 547 U.S. at 699-701).  Accordingly, even if Plaintiff's tortious interference claim raises an issue of federal law, such an issue would not be substantial, because it would not be important to "the federal system as a whole." *Gunn*, 568 U.S. at 260.  On the contrary, establishing whether Defendants violated federal tax laws by misclassifying "certain personal and business expenses as capital contributions to ensure the Petrillos would receive enormous loss allocations," (SAC ¶ 52), would be fact-bound and situation-specific, making federal jurisdiction inappropriate, *see In re Gen. Motors LLC Ignition Switch Litig.*, 69 F. Supp. 3d at 414; *Little Rest Twelve, Inc.*, 458 B.R. at 58.

16

In short, because neither of Plaintiff's state law claims necessarily raises a substantial federal issue, the Court does not have federal question jurisdiction over either claim.

### 3.    Supplemental Jurisdiction

Having determined that Counts I and III do not arise under federal law, the question remains whether the Court should nevertheless exercise supplemental jurisdiction over them. (*See* Selznick Ds' Mem. at 4, 19-20; APF Ds' Mem. at 2, 12-13; P's Opp. at 6-7.)  The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  As Plaintiff's Second Amended Complaint fails to state any federal claims on which relief can be granted, and considering the factors set forth in *Cohill*, the Court declines to exercise supplemental jurisdiction over Counts I or III.  *See* 28 U.S.C. § 1367(c).

As discussed, Plaintiff failed to respond to most of Defendants' substantive arguments for dismissal regarding Counts I and III.  Specifically, she did not address Defendants' arguments that all claims against the Selznick Defendants and APF are barred by the bankruptcy settlement agreement, that Count I fails to state a claim against the Selznick Defendants because they do not owe a fiduciary duty to Plaintiff, that Count I fails to state a claim against the Petrillo Defendants because they cannot be held personally liable for APF's obligations, or that Count III fails to state a claim against any Defendant because New York does not recognize a cause of action for tortious interference with a potential business benefit and Plaintiff has failed to plead facts that would support a tortious interference with contract or prospective business relations claim.  (*See*

P's Opp.)[5]  Consequently, even if the Court were to exercise supplemental jurisdiction over

Plaintiff's state law claims, the Court would find that Plaintiff has abandoned them by failing to

address Defendants' arguments in support of dismissing those claims.  *See Horsting v. St. John's

Riverside Hosp.*, No. 17-CV-3230, 2018 WL 1918617, at *6 (S.D.N.Y. Apr. 18, 2018) ("At the

motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by

failing to address the defendant's arguments in support of dismissing that claim.") (internal

quotation marks omitted); *Johnson v. City of N.Y.*, No. 15-CV-8195, 2017 WL 2312924, at *17

(S.D.N.Y. May 26, 2017) ("By failing to address Defendants' arguments in support of dismissing

this claim, it is deemed withdrawn or dismissed as abandoned."); *Bonilla v. Smithfield Assocs.

LLC*, No. 09-CV-1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (claims deemed

abandoned and dismissed as a matter of law where defendants raised three arguments for

dismissal of those claims and plaintiff responded to only one).

### C.    Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted).

"Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to

---

[5] This is not a case where the sheer breadth of Defendants' briefing prevented Plaintiff from chasing every ball they threw.  Although they argued for dismissal on many grounds, both the Selznick Defendants' and the APF Defendants' memoranda were within the Court's twenty-five-page limit.  (*See* Selznick Ds' Mem. at 23; APF Ds' Mem. at 25.)  Plaintiff did not request additional pages for her opposition or even use all the pages allocated to her by default.  Instead, Plaintiff chose to file a combined opposition of merely ten pages – nine, really, considering that the tenth page contains only four words from a widowed line; a boilerplate, one-sentence conclusion; and counsel's signature.  (*See* P's Opp. at 10.)  Thus, the Court does not understand why Plaintiff did not find it appropriate to address so many of Defendants' arguments for dismissal.

cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended twice, (*see* SAC), after having the benefit of pre-motion letters from Defendants, (Docs. 20, 24), as well as the Court's observations during the pre-motion conference, (*see* Minute Entry dated Mar. 24, 2020). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (internal quotation marks, alteration, and footnote omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, Plaintiff has not asked to amend again or otherwise suggested she is in possession of facts that would cure the deficiencies identified in this opinion. Indeed, "[t]he problem with [Plaintiff's] causes of action is substantive," and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Accordingly, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend).

IV.     **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, Count II is dismissed with prejudice, and Counts I and III are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 37, 42), and close the case.

**SO ORDERED.**

Dated: December 10, 2020
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.